NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1409

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 461415

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (SORB) as a level two sex offender.  The plaintiff argues that the SORB hearing examiner (examiner) abused his discretion in denying the plaintiff's motion for funds for a medical expert and that the denial deprived the plaintiff of his constitutional right to due process in the classification hearing.  We affirm.

Background.  1.  The underlying offense.  The parties do not dispute the facts found by the examiner.  In 2010, Brockton police were dispatched to a rape in progress.  When the police arrived, they observed two men arguing in the middle of a

parking lot.  One of the men approached the officers and informed them that the other man, later identified as the plaintiff, had just raped a fifteen year old girl -- specifically, the niece of the plaintiff's ex-girlfriend.  In 2013, the plaintiff pleaded guilty to two counts of rape and abuse of a child in violation of G. L. c. 265, § 23, and one count of indecent assault and battery on a person fourteen years of age or older in violation of G. L. c. 265, § 13H.

2.  The classification hearing.  In 2021, SORB notified the plaintiff of his duty to register as a level three sex offender.  The plaintiff requested a hearing to challenge SORB's recommendation.  SORB granted that request and held a de novo hearing in 2021.

Before the hearing, the plaintiff requested funds for an expert witness to evaluate the plaintiff, prepare a report, and testify at the hearing.  The plaintiff argued that his psychological profile, physical condition, and Hispanic ethnicity created a special condition or circumstance that would affect his risk of recidivism and dangerousness.  The examiner found this request was a general request to assess sexual recidivism, which should be denied pursuant to Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 775 (2008) (Doe No. 89230).

2

As part of his motion for funds for an expert witness, the plaintiff argued that an expert was necessary to testify on the application of SORB's classification guidelines to Hispanic and Latino individuals. The plaintiff argued that the scientific studies supporting SORB's classification guidelines were conducted using Caucasian and Black offenders and therefore could not accurately predict the recidivism risk of Hispanic offenders. The plaintiff did not propose funds for an expert with expertise in Hispanic and Latino culture, but rather submitted two articles addressing how the Static-99 and Static-99R underpredict the risk of reoffense for Hispanic offenders.

One of the articles suggested the Static-99 test may not be predictive of the risk of reoffense in Latino individuals born outside of the United States or Puerto Rico and conducted comparative research to uncover some cultural factors that may contribute to sexual offending behaviors among Latino individuals. The article ultimately concluded that its results did not "necessarily imply that Latinos are in fact at lower risk of reoffending." The other article found that the Static-99 and Static-99R performed the least well in determining Latino individuals' risk of recidivism but indicated that the results only suggest that the appropriateness of using the Static-99 test for Latino offenders has not yet been clearly established, and further research would be necessary.

3

The examiner denied the motion for expert funds.  In denying the motion, the examiner wrote:

> "The articles propose different ideas as to why the STATIC-99R is less predictive, however, these theories have not yet been tested.  One such theory, however, is that the STATIC relies heavily on historical records which are often unavailable when assessing foreign born Hispanic offenders.  However, the articles do cite to another study that found US born Hispanic offenders were scored more accurately on the STATIC-99R.  The articles also do not address the Board's collateral inquiry of dangerousness nor do they asses the effectiveness of the Board's more comprehensive and dynamic risk factors.  [The plaintiff] further failed to submit evidence that the Board's Regulatory Factors are based solely on Black and Caucasian offenders."

At the hearing, the plaintiff again made an oral motion for funds for an expert to testify on the risk of reoffense in Hispanic and Latino offenders.  The plaintiff argued that in the case of juvenile offenders, older offenders, and female offenders, SORB did not initially have sufficient studies to apply to the classification guidelines for these groups, but upon further research, has since incorporated these differences into the regulations.  In denying the oral motion, the examiner deferred to his prior reasoning.

The examiner instead considered the two articles submitted by the plaintiff as other useful information related to the nature of sexual behavior pursuant to Factor 37.  The examiner issued a detailed decision in which he found, by clear and convincing evidence, that the plaintiff presents a moderate risk of reoffense and a moderate degree of dangerousness.

4

Accordingly, the examiner ordered the plaintiff to register as a level two sex offender.

The plaintiff sought judicial review of the examiner's decision in the Superior Court pursuant to G. L. c. 30A, § 14; G. L. c. 6, § 178M; G. L. c. 231A; and G. L. c. 249, § 4. The plaintiff conducted discovery regarding the empirical basis for SORB's classification guidelines and represented in his Superior Court filings that only six of the thirty-two scientific articles and studies cited by SORB indicated the subjects' ethnic identity and therefore did not provide sufficient scientific information for how SORB's factors apply to Latino and Hispanic offenders. On October 2, 2023, a Superior Court judge denied the plaintiff's motion for judgment on the pleadings and entered a judgment affirming the examiner's decision. The plaintiff filed a timely appeal.

Discussion. The plaintiff argues that the examiner abused his discretion in denying the motion for expert funds and that the denial, and subsequent application of the regulatory factors, resulted in a deprivation of the plaintiff's constitutional right to due process in the hearing.

1. The denial of expert funds. "[T]he decision whether to grant an individual sex offender funds for an expert is a discretionary one, to be based on the facts presented in an individual case." Doe No. 89230, 452 Mass. at 775.

5

"[I]n moving for expert witness funds, the burden [is] on the sex offender to identify and articulate the reason or reasons, connected to a condition or circumstance special to him, that he needs to retain a particular type of expert. A general motion for funds to retain an expert to provide an opinion on the sex offender's risk of reoffense, without more, would appear to be insufficient."

Id.

It was the plaintiff's burden to explain how the identified condition or circumstance -- in this case being Latino or Hispanic -- was relevant to his risk of reoffense or level of dangerousness, and to provide evidence to support such relevance. See Doe, Sex Offender Registry Bd. No. 339940 v. Sex Offender Registry Bd., 488 Mass. 15, 28-30 (2021). See also 803 Code Mass. Regs. § 1.16(4)(a) (2016).

Here, the plaintiff did not identify any specific expert he sought to retain, nor did he identify an expert who has expertise in Hispanic or Latino culture. The plaintiff submitted articles that suggested some reasons why Static-99 testing may be less accurate for some Hispanic offenders, but those articles did not definitively conclude that Hispanic or Latino individuals have a lower recidivism risk than other offenders. Indeed, the articles stated that more research would be necessary to make that conclusion.

The plaintiff did not provide any research suggesting that Hispanic or Latino ethnicity is correlated with a lower risk of recidivism, a lower risk of dangerousness, or the

6

inapplicability of one of the SORB factors.  The examiner correctly determined that the articles did not present "current, validated evidence" demonstrating the relevance of a factor not accounted for in SORB's regulatory factors.  See Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 607-608 (2013) (Doe. No. 205614).  Accordingly, the examiner did not abuse his discretion in denying plaintiff's motion for expert funds where the plaintiff failed to meet his burden of establishing a sufficient nexus between his Latino or Hispanic ethnicity and his current risk of reoffense or level of dangerousness.  See Doe No. 89230, 452 Mass. at 775.

2.  Validity of the regulations.  The plaintiff argues that SORB's regulatory factors are invalid as applied to him due to his Hispanic ethnicity.  The plaintiff also argues that this invalid application of the regulatory factors deprived him of his due process rights.

"A plaintiff challenging the validity of regulations promulgated by an agency pursuant to its statutory authority faces a heavy burden to establish that those regulations are invalid."  Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 620 (2010) (Doe 151564).  "An agency has a wide range of discretion in establishing the parameters of its authority pursuant to the enabling legislation" (quotation omitted).  Id.  "Regulations promulgated

7

by an agency are valid unless they 'conflict with the statutes . . . under which the agency operates'" (quotation omitted). Id., quoting Duarte v. Commissioner of Revenue, 451 Mass. 399, 411 (2008). The statute under which SORB operates requires SORB to "promulgate guidelines for determining the level of risk of reoffense and the degree of dangerousness posed to the public" by sex offenders and sets forth the factors SORB must consider. G. L. c. 6, § 178K (1). To promulgate these regulations, SORB relies on the available literature and scientific studies conducted by leading researchers in the field of sex offender recidivism. See Doe No. 151564, supra at 620 (SORB's regulations are generally considered valid so long as they do not conflict with enabling statute and are based on reliable research). To satisfy his heavy burden to show the regulations were invalid, the plaintiff must show that research demonstrates one or more regulatory factors are now considered unreliable within the scientific community or that substantial evidence suggests an important factor, not currently considered by SORB, impacts risk of recidivism or level of dangerousness. See Id. at 620-623 (plaintiff sustained his burden by showing that substantial evidence suggested age was important factor in risk of recidivism and it was arbitrary and capricious for SORB to disregard such research).

The plaintiff did not satisfy his burden to show that any regulatory factor is now considered invalid by the scientific community, or that SORB should have considered a new, relevant factor. As discussed, the proffered articles offer some theories as to why the Static-99 assessment may be less accurate in predicting the risk of recidivism among Hispanic or Latino offenders than Caucasian and Black offenders; however, the articles do not present any evidence that any specific SORB regulatory factor does not accurately predict that risk. The SORB regulatory factors do not rely on the results of Static-99 testing, and therefore an alleged lack of accuracy in Static-99 testing does not call into question the validity of SORB's regulatory factors. See G. L. c. 6, § 178K (1) (a)-(l). Further, the articles do not present any evidence, let alone substantial evidence, that Latino and Hispanic ethnicity is relevant in predicting the risk of recidivism or level of dangerousness. Rather, the articles state that more research is necessary.

In addition, the enabling statute does not list race or ethnicity as a relevant factor that SORB must consider in promulgating the regulations for the classification of sex offenders. See G. L. c. 6, § 178K. SORB bases its regulations on reliable research reflecting a general scientific consensus about the factors relevant to predicting the risk of recidivism

9

and level of dangerousness.  That research does not suggest race or ethnicity is a relevant factor.  Therefore, SORB's decision not to include race or ethnicity among its factors is reasonable.  Doe No. 151564, 456 Mass. at 620.  See 803 Code Mass. Regs. § 1.33.  As such, the current regulations do not conflict with the statute and are valid.  See Doe No. 151564, supra.

To be sure, the plaintiff has a due process right to an individualized hearing based on regulatory factors supported by general scientific consensus.  Doe No. 205614, 466 Mass. at 608.  The examiner provided the plaintiff with an individualized review of his conditions and circumstances in which the examiner considered all applicable regulatory factors.  The examiner also considered the plaintiff's articles under Factor 37 as other useful information.  See Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 761 (2006) (sex offenders are protected from risk of erroneous deprivation of liberty by, inter alia, ability to submit any useful information to hearing examiners).  And, as we have already explained, the applicable regulatory factors were based on general scientific

consensus.  Accordingly, the plaintiff received adequate process to protect his interest in a proper classification.

Judgment affirmed.

By the Court (Massing,
  Neyman & Wood, JJ.[1]),

Clerk

Entered:  May 28, 2025.

---

[1] The panelists are listed in order of seniority.